[No. 833.]

FERRARIS LUIGI, Respondent, *v.* BIAGGIO LUCHESI, Defendant. FRED. BARNES, W. H. CLARK, AND MAX OBERFELDER, Garnishees and Appellants.

Authority of Trustees to Sell Property.—In construing an agreement, executed by an insolvent debtor and his creditors, appointing trustees to manage his property for the mutual benefit of all his creditors; the creditors agreeing to take a certain percentage of their demands; and if the percentage is paid, that the property shall be returned to the debtor; "otherwise, said property to be sold for the benefit of all parties creditors hereto, and divided *pro rata* between said creditors:" Held, that the authority to sell the property was clearly given to the trustees.

Idem—Liability of Trustees.—Where it is admitted that a sale of property by the trustees of the creditors of an insolvent debtor is honestly made and fairly conducted, and there is no evidence tending to show that the property was sold for any less than its full value, the trustees can only be held for what they actually received.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion of the court.

*G. W. Baker,* for Appellants:

I. When the language employed in a written instrument is plain and unambiguous, it must be interpreted according to its grammatical sense. It was the plain duty of the trustees, upon default being made on the part of McLeod to make the payments as therein stated, to sell the property.

II. The plaintiffs having succeeded to the rights of Biaggio Luchesi, were entitled to receive just what Biaggio Luchesi could have received, and no more. The effect of the garnishment upon them operated simply to change the payment of the *pro rata* from Biaggio Luchesi to the sheriff or the attaching creditor. When the property was sold and the amount coming to Luchesi was ascertained, the appellants were liable to plaintiff for the amount they received, two hundred and forty dollars, and no more, and this amount they tendered to him, and he declined to accept it.

III. We maintain, that when a garnishee denies or disputes the indebtedness, he is entitled to have the matter at issue submitted to a jury.

*Crittenden Thornton,* for Respondent:

I. The answer of the appellants did not constitute "a denial of the debt within the language of the statute. (Prac. Act, sec. 246; 1 Comp. Laws, sec. 1308.) Such a denial must be a denial in good faith, and not the opinion of the garnishees on the question of their own liability. (*Parker* v. *Page,* 38 Cal. 522.)

II. The first section of the "act to protect the wages of labor" (1 Comp. p. 51, sec. 141), gives the laborer a right or lien prior to any assignment for the benefit of creditors. The respondent in this case is within the protection of both the first and third sections. His right is superior to any conveyance by way of assignment, or any lien by attachment. His lien constituted a prior right to satisfaction out of the estate of McLeod superior to any right of his to assign, or of his general creditors, to receive his assets.

III. The agreement shows that the creditors of McLeod and McLeod himself placed the estate in the hands of the appellants upon a certain and specified trust, to sell the same for an amount not less than forty cents on the dollar of their aggregate claims, which sum was to be paid in certain specified fractions. In case this sum could not be had, the property was to be sold, and the proceeds divided. The power thus conferred upon the assignees was limited and special. They did not sell the property to any one for an amount equal to forty cents on the dollar.

IV. The assignees sold the property to Max Oberfelder, one of themselves, and another person, in disregard of their duties as the agents and trustees of the creditors, for a sum alleged to be equal to twenty per cent. of the claims. Trustees who are required or empowered to fulfill a specific duty, cannot buy the trust estate, or sell it to themselves. (*Wilbur* v. *Lynde,* 49 Cal. 292; *Andrews* v. *Pratt,* 44 Id. 309; *San Diego* v. *S. D. & L. A. R. R.,* 44 Id. 112.)

By the Court, HAWLEY, C. J.:

On the fourteenth day of January, 1876, the creditors of one Neil McLeod, among whom was the defendant Luchesi,

whose claim was one thousand two hundred dollars, and appellants Barnes, Clark and Oberfelder executed the following agreement:

"Witnesseth: That whereas, the said Neil McLeod has sold and transferred to us, in satisfaction of his indebtedness to us, all of his property, both real and personal, in the counties of Eureka and White Pine, state of Nevada; now, therefore, in consideration of the premises, it is mutually agreed between us to place said property in charge of Max Oberfelder, Fred. Barnes, W. H. Clark and H. Crowell, as our agents to manage the same for our mutual benefit; and we further agree to receive forty cents upon the dollar for each of our debts, respectively, to be paid as follows: one third to be paid six months from date, one third nine months from date and one third twelve months from date; and it is mutually agreed that, upon the payment being made as aforesaid, said property shall be returned to said McLeod; otherwise said property to be sold for the benefit of all parties, creditors hereto and divided *pro rata* between said creditors."

After the execution of this agreement the creditors of Luchesi brought suit and obtained judgment; and the appellants were regularly served with notice of garnishment. Certain proceedings were thereafter instituted in the district court, under the provisions of the "act to protect the wages of labor" (1 Comp. L. 141–143), and the plaintiff Luigi was therein declared to have a preferred lien, as against the other creditors of Luchesi, for four hundred dollars.

Subsequently the plaintiff Luigi obtained an order of court requiring the garnishees to appear and show cause why judgment should not be entered against them in favor of the plaintiff for the four hundred dollars and costs.

In obedience to this order the garnishees appeared and made answer by affidavit, showing, among other things, that they and one Hiram Crowell were appointed by the creditors of McLeod, trustees and agents to take charge, manage and dispose of the property assigned by McLeod; "that Neil McLeod did not pay the said forty per cent. of his said indebtedness, nor any other sum or amount of money there-

on whatever, and that, in accordance with the conditions of their trust, they proceeded to sell all of the said trust property to the best advantage possible, and in every respect honestly and faithfully performed the obligations of their said trust, and that the amount of money realized from said sale was and is only the sum of twenty per cent. upon the said indebtedness of McLeod, which, upon the indebtedness of said Biaggio Luchesi, for whom they were garnisheed, amounted to the sum of two hundred and forty dollars in United States gold coin, which said sum they now bring into court and tender to the plaintiff herein upon said garnishment, and have at all times since the sale of said property been ready and willing to pay over the same."

It was admitted on the hearing of the rule in this proceeding, that the evidence offered by the garnishees is true, " except the opinions on the questions of their legal liability." It was also admitted that the plaintiff was entitled to receive whatever amount of money there was in the hands of said garnishees coming to Luchesi as a creditor of McLeod.

Thereupon the court entered judgment "against the said garnishees, * * * for the sum of four hundred and forty dollars," and costs.

From this judgment the garnishees appeal.

From the record it appears that the trustees of the creditors of McLeod sold the property to R. Sadler and Max Oberfelder (one of the trustees), in July or August, 1866.

Admitting for the purposes of this opinion (a point that is very doubtful,) that the proceedings against the garnishees were regular, and that the court thereby obtained jurisdiction to enter judgment against them, we are of the opinion that the court erred in rendering the judgment for four hundred and forty dollars.

We are unable to perceive how the plaintiff Luigi could obtain any greater right or privilege by virtue of the proceedings had in the district court than the defendant Luchesi possessed. He certainly cannot claim any greater sum from the trustees of the creditors of McLeod than Luchesi, a creditor, could have claimed if he had not been

sued and his claim had not been attached. It was unnecessary for the trustees to obtain the consent of either Luchesi or Luigi to the sale of the property if they had authority to sell it by virtue of the execution and delivery of the agreement signed by all of the creditors of McLeod.

Were the trustees authorized to sell the property under the agreement for less than forty cents on the dollar of the indebtedness due from McLeod? This, in our judgment, is the material question presented by this appeal.

The clause in the agreement, that if forty per cent. of the indebtedness was paid within a certain time the property should be returned to McLeod, was evidently inserted because it was one of the conditions that induced McLeod to make the assignment, and was not, as counsel for respondent claims, a specific trust that the property should be sold for an amount not less than forty cents on the dollar of the aggregate claim of the creditors.

The agreement, though not as specific as it might have been made, will not, in our judgment, reasonably admit of the construction sought to be placed upon it by respondent. The authority to sell the property was clearly given to the trustees. The very object of the execution of the agreement evidently was to place the property in the hands of the trustees, in whom all the creditors had confidence, so as to enable them to act for the creditors without further consent. Under the terms of the agreement, the trustees were to act for the mutual benefit of all the creditors. The creditors were willing to receive forty cents on the dollar, and if that amount was paid the property was to "be returned to said McLeod;" if not paid, then the property was "to be sold for the benefit of all parties creditors hereto, and divided *pro rata* between said creditors." No restriction was placed upon the trustees, either as to the manner of the sale, the time when it should be made, or the price for which the property was to be sold. These were questions left to the good sense and sound judgment of the trustees, who were, of course, bound to act in good faith for the mutual benefit of all the creditors.

It is admitted that the sale was honestly made and fairly

conducted, and there is no evidence tending to show that the property was sold for any less than its full value. Surely it requires neither argument nor authority for the statement that in such a case the trustees can only be held for what they actually received.

But, notwithstanding the admissions in the record, respondent argues that the trustees could not sell the property to one of their own number. If this proposition is admitted, in what position does it place the respondent? From the admissions in the record it is apparent that the trustees could not, in any event, be held for any more than the full value of the property. (*Osgood* v. *Franklin*, 2 John. Ch. 27; *Higgins* v. *Whitson et al.*, 20 Barb. 141; *Litchfield* v. *White*, 7 N. Y. 443; *Neff's Appeal*, 57 Penn. St. 96; *Pitt* v. *Petway*, 34 N. C. 69; *Roberts* v. *Roberts*, 65 N. C. 27.)

As respondent does not contend that the value of the property was any more than was obtained by the trustees, what difference does it make to him whether he accepts the amount the trustees actually received or recovers from them in proportion to the full value of the property? The latter position, if maintained, would necessitate a new trial and involve unnecessary costs and expense without any accruing benefit or advantage. Still, if the respondent desires to dismiss the proceedings herein and commence an action to recover the *pro rata* proportion of the full value of the property he ought, perhaps, to be given an opportunity to do so.

It is clear that in this proceeding no judgment can be sustained against the appellants in excess of the sum of two hundred and forty dollars, that being the amount they admit having received.

Under the peculiar facts and circumstances of this case, it is ordered that the judgment of the district court be reversed and cause remanded for further proceedings, unless the respondent, within twenty days after the filing of the remittitur herein, remits the sum of two hundred dollars and all costs incurred by appellants on this appeal, in which event the judgment as modified by the remission will be affirmed.